**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, ) | |
|     Plaintiff, ) | |
| ) | **PUBLISH** |
| v. ) | |
| ) | |
| RUDOLPH F. ROLISON, SR., *et al.*, ) | |
|     Defendants. ) | |
| _____ ) | **CIVIL ACTION 06-0025-WS-M** |
| ) | |
| ADDICTION & MENTAL HEALTH ) | |
| SERVICES, INC., d/b/a BRADFORD ) | |
| HEALTH SERVICES, ) | |
|     Defendant/Counterclaim Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LEXINGTON INSURANCE COMPANY, ) | |
|     Plaintiff/Counterclaim Defendant. ) | |

**ORDER**

This matter is before the Court on three pending motions, to-wit: defendant Rudolph Rolison's Amended Motion to Dismiss and/or Motion to Abstain (doc. 8), plaintiff/counterclaim defendant Lexington Insurance Company's Motion to Dismiss Count Two of Bradford's Counterclaim (doc. 30), and defendant/counterclaim plaintiff Addiction & Mental Health Services, Inc.'s Motion for Leave to File Amended Counterclaim (doc. 35). All of these motions have been briefed and are now ripe for disposition.[1]

**I.    Background.**

This insurance dispute bears a complicated, multi-tiered procedural pedigree. It constitutes one of four related lawsuits arising from a tragic automobile accident on February 7, 2002 at the junction of Interstate Highway 65 and Alabama State Highway 225, which resulted

---

[1] Also pending is Rolison's original Motion to Dismiss and/or Motion to Abstain (doc. 7). Inasmuch as that Motion has been superseded in its entirety by the Amended Motion, the original Motion to Dismiss and/or Motion to Abstain (doc. 7) is **moot**.

in the death of teenaged Melissa Allison Sproles ("Sproles").  On or about September 23, 2002, Laura Miller ("Miller"), as mother and next friend of Sproles, filed suit in Mobile County Circuit Court against Addiction and Mental Health Services, Inc., d/b/a Bradford Health Services, Inc. ("Bradford") and Rudolph Rolison ("Rolison") in an action styled *Laura Miller v. Bradford Health Services, Inc. and Rudolph Rolison*, CV-2002-3206 (the "*Miller* Action").  In that lawsuit, Miller alleged that Rolison, operating within the line and scope of his employment with Bradford, negligently and wantonly swerved his vehicle in front of Sproles', causing Sproles to lose control of her vehicle, collide with a tractor trailer, and sustain fatal injuries.  In addition to the negligence and wantonness claims against Rolison, the *Miller* Action included claims against Bradford for negligence, wantonness, and negligent entrustment.  When *Miller* went to trial in January 2005, a jury found in the plaintiff's favor and awarded a judgment of $3 million against Bradford and Rolison.

Bradford was defended in the *Miller* Action by both Lexington Insurance Company ("Lexington"), its general liability insurer, and St. Paul Fire and Marine Insurance Company ("St. Paul"), its commercial automobile insurer, pursuant to reservations of rights.[2]  These insurers did not defend Rolison.  The defendants appealed the *Miller* jury verdict; however, the state court judge denied Rolison's request for a stay on December 16, 2005, and Miller initiated steps to enforce the judgment against Rolison shortly thereafter.  Once this process began, it was followed by a proliferation of litigation, as three more lawsuits were filed in quick succession. The earliest was the instant action ("the *Lexington* Action"), filed by Lexington against Rolison, Bradford and Miller in this District Court on January 20, 2006, seeking a declaration as to the parties' respective rights and obligations under Lexington's policy of insurance.  (*See* doc. 1.)[3]

---

[2]      Bradford also had a third carrier, Royal Insurance Company of America ("Royal"), that provided umbrella coverage to Bradford during the relevant time period.  Royal is a party to the *Rolison* Action, as discussed *infra*, but is not and has never been a party to this lawsuit.

[3]      On March 9, 2006, defendant Bradford filed a two-count Counterclaim (doc. 17) against Lexington in this case, alleging that the latter breached its contractual obligations to Bradford under the applicable insurance policy by failing to indemnify it and settle the *Miller* Action, and that Lexington also engaged in negligent or bad-faith refusal to settle the *Miller* Action despite timely demands from Bradford.

Less than four weeks after the *Lexington* Action was filed, on February 15, 2006, Rolison filed a lawsuit of his own against Lexington, St. Paul, Royal and others in the Circuit Court of Choctaw County, Alabama, alleging causes of action for breach of contract and bad-faith failure to settle the *Miller* Action, among others.  The crux of Rolison's claims was that he was an insured under Bradford's insurance policies with Lexington, St. Paul and Royal, and that he was aggrieved by those carriers' failure to protect his interests in connection with the *Miller* Action and the ensuing judgment.[4]  That case was styled *Rudolph Rolison v. St. Paul Fire & Marine Insurance Company, et al.*, CV-06-15 (the "*Rolison* Action").  St. Paul removed the *Rolison* Action to this District Court on March 24, 2006, at which time it was placed on the undersigned's docket and assigned Civil Action No. 06-177-WS-B.  Rolison promptly moved to remand the *Rolison* Action to state court, citing both procedural and jurisdictional defects.  On May 15, 2006, the undersigned granted the motion and remanded the *Rolison* Action to Choctaw County Circuit Court, finding that removal was untimely and therefore procedurally defective.[5]

Armed with this procedural background, the undersigned will address the pending motions in this action.[6]

---

[4]     Rolison also sued Bradford and two of its employees, Bob Coleman and Shelly Clark, for alleged misrepresentations in connection with whether Rolison would be fully covered by Bradford's policies of insurance in performing duties on Bradford's behalf.  Like Rolison, Bradford, Coleman and Clark are Alabama citizens for diversity purposes.

[5]     It is the Court's understanding that yet another lawsuit has spun off from the *Miller* litigation, as St. Paul evidently filed a declaratory judgment action of its own in the United States District Court for the Northern District of Alabama just one day after the *Lexington* Action.  It is staggeringly inefficient, to say the least, that the discrete issues of the insurers' rights, duties and liabilities with respect to Rolison and Bradford in the *Miller* Action have yielded three roughly contemporaneously-filed actions  pending in three different fora involving substantially similar parties and addressing overlapping (if not identical) issues.

[6]     Pleadings filed in both this action and in *Rolison* in recent weeks alluded to imminent settlement of the *Miller* Action.  In light of this information, on April 3, 2006, the undersigned entered an Order (doc. 33) in this action setting forth its expectation "that the parties will file appropriate pleadings to the extent the underlying settlement impacts either of these two related actions now pending before the undersigned."  (Doc. 33.)  On May 4, 2006, St. Paul filed a Notice (doc. 21) in the *Rolison* Action announcing "full and final resolution" of all claims in the *Miller* Action against both Bradford and Rolison, and further stating "that the judgment entered against both Bradford and Rolison in the underlying litigation has been fully satisfied."

## II.   Rolison's Motion to Dismiss or Abstain.

### A.   Positions of the Parties.

As the Court understands it, the crux of Rolison's Motion is that the Court should abstain from deciding the *Lexington* Action, pending resolution of the overlapping, later-filed *Rolison* Action.  Rolison's position, which Lexington does not challenge, is that the *Lexington* Action concerns "the exact same factual and/or legal issues" raised in the *Rolison* Action.  (Amended Motion to Dismiss, ¶ 5.)  Rolison further asserts that *Lexington* was filed "merely to beat Rolison to the punch" and "to win the race to the courthouse."  (*Id.* at ¶ 4 & n.1.)  As factual grounds for this objection, Rolison points to a January 10, 2006 letter written by his personal counsel to insurance-appointed counsel for Bradford demanding that Bradford or its insurers post a supersedeas appeal bond on Rolison's behalf to prevent Miller's attorneys from executing the *Miller* judgment against him during the pendency of the appeal.  The January 10 letter stated as follows:

> "Let this letter serve as official notice that you have 7 days in which to purchase a bond that would cover Rudolph Rolison in this matter or he will be forced to protect himself."

(Motion to Dismiss, at Exh. D.)  Lexington does not dispute that it had actual, contemporaneous notice of the January 10 letter.  The *Lexington* Action was filed just 10 days later.  In light of this sequence of events, Rolison urges the Court to apply the criteria of *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005) and abstain from this declaratory proceeding in favor of the parallel *Rolison* Action, pursuant to bedrock principles of comity, federalism and

---

On May 8, 2006, Lexington filed a Notice (doc. 42) containing similar representations in this action, confirming that Bradford's insurers have fully and completely satisfied the *Miller* judgment as to both Bradford and Rolison.  Inasmuch as this action turns to a large extent on Lexington's duties and obligations to indemnify Bradford and Rolison under the applicable policy of insurance, it is not clear that any live dispute remains here.  Nonetheless, Lexington represents that this case remains "viable and necessary" as a vehicle to resolve disputes concerning the parties' respective rights and duties.  (*See* doc. 42.)  This statement is inscrutable, given that this action is fundamentally about Lexington's obligations vis a vis the *Miller* judgment, which has now been voluntarily satisfied in full by Bradford's insurers, including Lexington.  It is not clear that any material disputes among the parties remain.  Nonetheless, the Court will accept Lexington's representations in this regard, and will assume that the *Miller* settlement has mooted neither those Motions nor this litigation.

efficient use of judicial resources.

Both Bradford and Lexington oppose Rolison's Motion. For its part, Bradford points out that it has filed counterclaims against Lexington in these proceedings seeking monetary relief for breach of contract and bad-faith refusal to settle, thereby removing this action from the Declaratory Judgment Act's zone of discretion and obligating the Court to exercise jurisdiction. Meanwhile, Lexington contests Rolison's characterization of this action as an anticipatory filing and, further, furnishes a separate analysis of the *Ameritas* factors that, it contends, mandates a finding that abstention is improper. Significantly, neither Bradford nor Lexington disputes Rolison's contention that there is considerable factual and legal overlap between the issues presented here and those in the *Rolison* Action.

### B.  *Legal Standard.*

The Complaint reflects that Lexington's claims in this action sound exclusively in declaratory judgment, and were brought "pursuant to the provisions of 28 U.S.C. § 2201 to determine the rights and duties of the parties." (Complaint, ¶ 7.) But it is well-settled that the Declaratory Judgment Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted). As the Eleventh Circuit recently observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas*, 411 F.3d at 1330. "The desire of insurance companies ... to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3rd Cir. 2000); *see also Prudential Ins. Co. v. Doe*, 140 F.3d 785, 789 (8th Cir. 1998) ("The Supreme Court's decision in *Wilton* vests the district courts with broad discretion in deciding whether to hear a declaratory judgment action.").

Consistent with the foregoing, it has long been recognized in this Circuit that a district court has discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982). In *Ven-*

*Fuel*, the plaintiff initiated a declaratory judgment action against the government in the U.S. District Court for the Southern District of Florida just one day after the government threatened legal proceedings if the plaintiff did not pay a certain assessed penalty forthwith.  A week later, the government filed suit in the District of Massachusetts seeking to recover the penalty, such that there were two pending federal actions addressing precisely the same legal and factual issues.  Based on its assessment that the Florida action had been filed "in apparent anticipation of imminent judicial proceedings by the Government" and that this equitable consideration could properly be considered in deciding whether to hear the declaratory judgment action, *Ven-Fuel* held that the Florida district court did not abuse its discretion in declining to entertain the declaratory judgment action, and instead deferring to the Massachusetts court.  *Id.* at 1195.[7]

Last year, the Eleventh Circuit expounded on its *Ven-Fuel* holding in two published opinions that furnish district courts with considerable guidance in how to wield their discretion under the Declaratory Judgment Act where there are parallel state proceedings.  In *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), the court emphasized that considerations of federalism, comity, and efficiency require district courts to balance federal and state interests in determining how to exercise their discretion to hear a declaratory judgment action in the face of a parallel state action.  *Id.* at 1330-31.[8]  To assist district courts in this balancing endeavor, the *Ameritas* court promulgated a non-absolute, non-exhaustive set of

---

[7]     *Ven-Fuel* is consistent with extant Supreme Court jurisprudence.  More than 60 years ago, the Supreme Court opined that it would be both "uneconomical" and "vexatious" for a federal district court to proceed with a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court.  *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).  The *Brillhart* Court admonished lower courts scrupulously to avoid what it termed "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation."  *Id.*

[8]     These considerations have been echoed by other appellate courts.  *See, e.g., Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (federal court "should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation"); *Mitcheson v. Harris*, 955 F.2d 235, 237-39 (4th Cir. 1992) (citing as reasons to dismiss declaratory actions the philosophy of judicial federalism, as well as equally important pragmatic concerns of efficiency and comity).

"guideposts" to be considered, including: (i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action is a form of "procedural fencing" being utilized "to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case not otherwise removable"; (v) whether a ruling in the declaratory judgment action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory action. *See id.* at 1331.

Mere months after *Ameritas*, the Eleventh Circuit provided both reinforcement and clarification of that opinion in *Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005). The *Manuel* court reiterated that the decision to hear a declaratory judgment action is discretionary, that there can be no rigid or mechanical application of the Declaratory Judgment Act, and that a vast spectrum of considerations is available to district courts deciding whether to hear declaratory judgment actions. *See id.* at 1135, 1137-38. Particularly illuminating are *Manuel*'s comments concerning anticipatory filings. While recognizing that one equitable consideration is whether a declaratory judgment action was filed in anticipation of the other proceeding, the *Manuel* court stressed that "[e]ven if a court finds that a filing is anticipatory, this consideration does not transmogrify into an obligatory rule mandating dismissal," but is simply one factor among many that may be considered. *Id.* That said, however, *Manuel* construed *Ven-Fuel* as standing for the proposition that, while a district court need not dismiss a declaratory judgment action filed in anticipation of another proceeding, it is not an abuse of discretion to rely on that fact (in tandem with other relevant considerations) to dismiss the action. *Id.* at 1137.

### C.    Analysis.

Rolison's Motion rests exclusively on the notion that, pursuant to *Ameritas*, the discretion created by the Declaratory Judgment Act should be exercised in favor of abstention,

given the pendency of the *Rolison* Action in state court.[9]  In opposing the Motion, Lexington and

Bradford delineate two key counterarguments.  First, Bradford maintains that its substantive

Counterclaims render *Ameritas* inapposite and impose a virtually unflagging obligation upon this

Court to exercise jurisdiction absent exceptional circumstances that Rolison has not alleged,

much less established.  Second, Lexington argues that even under an *Ameritas* analysis, this

declaratory judgment action should proceed because Rolison (and not Lexington) is the real

forum-shopper here, Rolison never threatened to sue Lexington before this action was filed, and

the *Ameritas* factors favor exercise of federal jurisdiction in this case.  Each argument will be

considered separately.

        *1.*       Wilton/Brillhart *Discretion Applies.*

Bradford contends that an *Ameritas* analysis would be improper, as a matter of law,

because the instant action is not confined to claims for declaratory judgment.  Indeed, Bradford's

Counterclaims against Lexington demand monetary relief in excess of $500,000 in compensatory

damages, plus punitive damages, based on Alabama state law claims of breach of contract and

bad-faith refusal to settle.  As a result of its Counterclaims, Bradford argues, this action lies

outside the *Ameritas* framework.  While this Court would ordinarily be vested with broad

discretion under *Wilton* in deciding whether to hear Lexington's claims for declaratory

judgment, according to Bradford, no concomitant discretion attaches to its Counterclaims, which

the Court must hear.  If the Counterclaims must remain in federal court, the logic goes, then so

must the declaratory judgment claims, so as to avoid splintering this litigation into small

fragments to be decided by different courts in different fora.

As support for its position, Bradford relies on *Government Employees Ins. Co. v. Dizol*,

133 F.3d 1220 (9th Cir. 1998) (en banc), wherein the Ninth Circuit opined that, as a general rule,

a district court should not decline to hear claims for declaratory relief that are joined with other

claims, such as those for bad faith or breach of contract.  *See id.* at 1225.  To reach this

conclusion, the *Dizol* court began with the premise that "[b]ecause claims of bad faith, breach of

---

[9]      Rolison has not asked the Court to abstain from hearing this dispute under
principles of *Burford* or *Colorado River* abstention; therefore, the undersigned will not *sua
sponte* explore whether abstention would be viable under those doctrines.

contract, [etc.] provide an independent basis for federal diversity jurisdiction, the district court is without discretion to remand or decline to entertain" those particular claims, but must instead honor its "unflagging obligation" to hear them. *Id.* at 1225 n.6. If the substantive claims must be retained in federal court where they were properly filed, the *Dizol* court reasoned, then the declaratory judgment claims likewise "should be retained to avoid piecemeal litigation." *Id.* at 1226. Based primarily on *Dizol*, Bradford maintains that a *Wilton/Brillhart* discretionary-type analysis is inappropriate here, and that abstention is warranted only if this case satisfies the much more stringent test for abstention announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[10]

Bradford's reliance on this *dicta* from *Dizol* is misplaced. As an initial matter, the Ninth Circuit has since refined these principles, particularly as they relate to situations in which substantive claims are joined with claims for declaratory judgment. In *United National Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102 (9th Cir. 2001), the court made clear that the above-cited portion of *Dizol* does not automatically render the exercise of jurisdiction mandatory over actions filed under the Declaratory Judgment Act, stripping away all *Wilton* discretion, simply because claims for monetary damages have been joined. *See id.* at 1112.

More importantly, the viewpoint of the Ninth Circuit as expressed in *Dizol* and its progeny is not unanimously embraced by federal courts nationwide. No party has identified, and this Court has not found, any Eleventh Circuit authority tackling this thorny question. However, a recent published decision out of the Eastern District of Pennsylvania quite helpfully sheds light on this esoteric subject by surveying federal caselaw and outlining three distinct, emergent lines of precedent. *See ITT Industries, Inc. v. Pacific Employers Ins. Co.*, --- F. Supp.2d ----, 2006

---

[10]     In a nutshell, *Colorado River* authorizes a federal district court to dismiss or stay an action where there is an ongoing parallel action in state court, but only under "exceptional circumstances." *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004); *see also Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) ("federal courts can abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances"). This doctrine is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813; *see also Ambrosia Coal*, 368 F.3d at 1329 ("[o]nly the clearest of justifications will warrant dismissal of the federal action" under *Colorado River* doctrine).

WL 950751, *3-*4 (E.D. Pa. Apr. 13, 2006).  One approach identified by *ITT* is to find that the *Wilton/Brillhart* discretionary standard is *per se* supplanted by the harsher *Colorado River* test whenever an action includes both declaratory and non-frivolous coercive claims.  *See Kelly Investment, Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 n.4 (5th Cir. 2003); *Mega Life and Health Ins. Co. v. Tordion*, 399 F. Supp.2d 1366, 1370 (S.D. Fla. 2005).  A second is to proclaim that exercise of jurisdiction is mandatory (subject only to *Colorado River* constraints) if the coercive claims can exist independently of requests for declaratory relief, such that they could persist and survive even if the declaratory claims vanished.  *See R&D Latex*, 242 F.3d at 1112.[11]  The third avenue, championed by a number of courts, is simply to "look[] to the 'heart of the action' to determine if the standard of *Wilton* or that of *Colorado River* should apply." *ITT*, 2006 WL 950751, at *4.[12]  Under that standard, "if the outcome of the coercive claims hinges on the outcome of the declaratory ones, *Wilton*'s standard governs; conversely, if the opposite applies, *Colorado River*'s standard controls."  *Coltec Industries, Inc. v. Continental Ins. Co.*, 2005 WL 1126951, *2 (E.D. Pa. May 11, 2005).[13]

---

[11]      The *R&D Latex* court explained the Ninth Circuit's standard in the following terms: "The proper analysis, then, must be whether the claim for monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed. In other words, the district court should consider whether it has subject matter jurisdiction over the monetary claim alone, and if so, whether that claim must be joined with one for declaratory relief." 242 F.3d at 1113.

[12]      *See also United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 492-94 (4th Cir. 1998) (applying *Wilton* criteria even though plaintiff had filed counterclaim for breach of contract); *Gatewood Lumber, Inc. v. Travelers Indem. Co.*, 898 F. Supp. 364, 366 (S.D. W.Va. 1995) (observing that even though parties were seeking substantive relief and declaratory judgment, substantive claims were closely tied to interpretation of insurance contract at issue in declaratory claims, such that requests for declaratory judgment were at heart of the case and *Wilton* discretion applied); *Hinkel Excavation and Const., Inc. v. Construction Equipment Intern., Ltd.*, 2000 WL 33915812, *3 (N.D. Iowa Nov. 20, 2000) (applying *Brillhart* and not *Colorado River* where plaintiffs sought both declaratory judgment and rescission, and declaratory judgment claim was at the heart of the case because rescission claims were closely tied to interpretations of contracts at issue).

[13]      Arguably, there is a fourth line of precedent as well, pursuant to which the presence of a declaratory judgment claim always gives rise to *Wilton* discretion, regardless of the other facts and circumstances.  *See Great American Ins. Co. v. Gross*, 2005 WL 2009284, *4

After studying these precedents and the parties' respective briefs, the undersigned finds that the "heart of the action" test is the most appropriate and the most readily reconcilable with applicable legal principles.  In *Wilton*, the unanimous Supreme Court explained that declaratory judgment actions are fundamentally different than ordinary civil actions because of the discretion imbued in district courts by Congress in deciding whether and when to avail themselves of this "remedial arrow in the district court's quiver."  515 U.S. at 288.  Thus, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Id.*  To eradicate that discretion simply because a coercive claim has been tacked onto what is, at its core, a declaratory judgment action would be to jettison those same considerations of practicality and wise judicial administration, to exalt form over substance, to marginalize *Wilton*, and to undermine the statutory scheme established by Congress.  If peripheral monetary claims could deprive district courts of the discretion granted them by the Declaratory Judgment Act to hear or not to hear what are fundamentally declaratory judgment actions, then such claims would render federal courts virtually powerless (save for the rare case in which *Colorado River* abstention is warranted) to avert wasteful, duplicative declaratory litigation on exclusively state law issues in federal court running alongside parallel state litigation on the same issues, with concomitant disruption to the time-honored values of federalism, comity and efficiency.  Worse still, such a rule might encourage abuses, as savvy litigants would recognize that creative pleading of tagalong coercive claims in tandem with declaratory judgment claims was a surefire means of circumventing *Wilton* and preserving a federal forum, notwithstanding parallel state

(E.D. Va. Aug. 19, 2005) ("The broad discretion to dismiss or stay a declaratory judgment action is unaffected by the fact that an insurer also seeks [non-declaratory relief] on the same facts.  Moreover, the mere existence of counterclaims does not diminish this discretion.").  This approach swings the pendulum too far, in the undersigned's view, by authorizing *Wilton* / *Brillhart* abstention even if a predominantly monetary damages suit happens to include an isolated, subsidiary claim for declaratory judgment.  Such a rigid approach expands *Wilton*/*Brillhart* abstention beyond the parameters contemplated by the Supreme Court, and outstrips the sound policy justifications underlying *Wilton* discretion.

proceedings.[14]

One of the most desirable features of the "heart of the action" rule is its flexibility, as it allows district courts to treat different cases differently based on the fundamental character of a particular action.[15]  For example, if a plaintiff has brought a dozen substantial claims for monetary damages, with a tangential claim under the Declaratory Judgment Act appended as an afterthought at the end of the initial pleading, the declaratory judgment claim clearly would not lie at the heart of the action, and *Wilton* discretion would be inapplicable.  By contrast, *Wilton* would furnish the rule of decision in a case where (i) the initial pleading is styled "Complaint for Declaratory Judgment" and the only cause of action is for declaratory relief; (ii) six weeks after the case began, one of three named defendants filed a two-count Counterclaim advancing claims for monetary damages that are derivative of, and intertwined with, the plaintiff's declaratory judgment claim; (iii) the coercive claims asserted in the Counterclaim hinge on the proper interpretation of the insurance policy that is the subject of the declaratory judgment claims; and (iv) those coercive claims could be raised and fully litigated in the parallel state litigation.  *See ITT*, 2006 WL 950751, at *5 (finding that while amended complaint contained claims for bad faith and breach of contract, in addition to declaratory judgment, cutting through "rhetorical fog" of pleadings illustrated that essence of dispute was scope of insurance coverage, and that bad faith/contract claims depended on declaratory claims).  This latter combination of circumstances is precisely the posture of the instant action.  Accordingly, the Court readily concludes that this case is, at its heart, a declaratory judgment action, and that the discretionary standard of *Wilton*

---

[14]    In pointing out this likelihood, the Court is in no way casting aspersions on the legitimacy of Bradford's Counterclaims in this action, nor is it imputing any improper or untoward forum-shopping motives to Bradford in filing such claims.

[15]    The alternative approaches do not offer sufficient flexibility in this regard.  "To apply the *Colorado River* standard to actions containing both declaratory judgment and coercive claims without an analysis of the facts at hand would be to ignore the Supreme Court's specific recognition that declaratory judgment actions necessitate a different treatment than other types of cases." *ITT*, 2006 WL 950751, at *5.  Analogous reasoning counsels against the *Great American* "discretion-no-matter-what" regime.

(and the multifactor analysis of *Ameritas*) applies.[16]

 2. *The* Ameritas *Factors Warrant Abstention.*

Having determined that *Wilton* discretion does attach in this case, the undersigned next must apply the nine *Ameritas* guideposts (as described previously) to the particular circumstances here in order to assess whether abstention in favor of the *Rolison* Action in Choctaw County is appropriate.

The first *Ameritas* factor concerns "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts." 411 F.3d at 1331. Alabama state courts undoubtedly have a substantial interest in deciding the issues presented in this lawsuit. The underlying *Miller* Action was litigated in an Alabama state court, and the ensuing judgment was entered by an Alabama state court. The legal issues presented by the Complaint and Counterclaims are all Alabama state law issues concerning interpretation of an insurance contract issued to an Alabama business in the state of Alabama, the legal status of an Alabama resident (Rolison) vis a vis an Alabama business (Bradford), and whether Lexington engaged in improper claims-handling and settlement practices with regard to that Alabama action and Alabama judgment. This element points toward abstention.[17]

---

[16] Many (if not all) of the decisions cited by Bradford in support of the notion that *Colorado River*, and not *Wilton*, governs Rolison's Motion involve coercive claims appearing side by side with declaratory claims in the complaint, rather in counterclaims filed by a defendant. Rolison urges the Court to reject Bradford's *Colorado River* argument out of hand on the basis of this distinction. However, the Court is unaware of any principled reason why the assertion of coercive claims in a counterclaim rather than a complaint should be a *per se* guarantee of *Wilton* discretion. Under certain circumstances, a counterclaim could be emblematic of the heart of the action. More generally, viable claims to which federal subject-matter jurisdiction applies are no less worthy of being heard in federal court because they appear in a counterclaim rather than in a complaint. Nor does the Court need to make such an extreme, sweeping pronouncement regarding coercive counterclaims as a whole in order to eschew reliance on *Colorado River* here. Rather, it suffices to find (and the Court does find) that the "heart of the action" test applies, and that on the facts and circumstances presented here, the declaratory judgment cause of action lies at the heart of these proceedings.

[17] Lexington disputes this analysis by arguing that the relevant judgment was entered in Mobile County, while the *Rolison* Action was filed in Choctaw County. According to Lexington, "[t]he Choctaw County state court has no interest in this action." (Lexington Brief (doc. 20), at 14.) But *Ameritas* does not instruct district courts to evaluate the interest of

-13-

Second, *Ameritas* looks to "whether the judgment in the federal declaratory action would settle the controversy." *Id.* It undoubtedly would not. This litigation is a subset of that presented in the *Rolison* Action. Indeed, several parties to the *Rolison* Action, including St. Paul, Royal, Shelly Clark, and Bob Coleman, are not parties to this case. Resolution of the issues presented by Lexington and Bradford here would leave unresolved various matters in the *Rolison* Action, including coverage and bad faith issues pertaining to Bradford's insurance contracts with St. Paul and Royal, not just with Lexington. Also, a ruling in this declaratory judgment action adverse to Lexington would not obviate the need to proceed in the *Rolison* Action; to the contrary, Rolison would be obliged to move forward with his damages claims against Lexington in the *Rolison* Action because those claims are not part of this litigation. Imagine the awkwardness that would result if this Court found against Lexington on the declaratory judgment claim, leaving the state court to entertain Rolison's damages claims even if it disagreed with the undersigned's declaratory ruling on coverage. That kind of unnecessary, entangling interference is exactly the reason animating *Wilton* discretion, and plainly militates in favor of abstention here.[18]

The third *Ameritas* guidepost is "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue." *Id.* It undoubtedly would, to a limited degree. Both Lexington and Rolison stand to benefit from clarification of the legal relations between them (albeit a clarification that could be equally well or better provided by an Alabama state court in the *Rolison* Action). While this action cannot fully and finally resolve the parties'

---

Choctaw County in deciding the dispute; rather, it turns on whether Alabama has an interest in having this dispute decided in its courts, instead of federal courts. That question is undoubtedly answered in the affirmative. Besides, Rolison's evidence is that he is now a resident of Choctaw County, Alabama. Surely Choctaw County has some interest in deciding state law legal disputes involving its residents.

[18]     *See Ameritas*, 411 F.3d at 1331 (abstention warranted where district court had before it an incomplete set of parties and claims, while state court action encompassed complete controversy); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) (dismissal of declaratory judgment action was proper where issuance of declaratory judgment would settle part of controversy, but not the entire matter, while state litigation could resolve all issues in dispute).

dispute (as explained *supra*), it could at least provide some marginal clarification.  As it cannot be reasonably disputed that a declaration of the parties' rights and obligations by this Court would afford some utility to the litigants, this factor points weakly against exercise of discretion not to hear this action.

The parties disagree vehemently over the fourth *Ameritas* consideration, to-wit: "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' – that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable."  *Id.*  The critical bone of contention is whether Lexington raced to the courthouse to file this action in anticipation of Rolison filing a lawsuit of his own.  It is undisputed that, just 10 days before Lexington filed suit, it received a letter from Rolison's attorney stating that unless Lexington purchased an appeal bond to cover Rolison concerning the *Miller* judgment, "he will be forced to protect himself."  (Motion to Dismiss, at Exh. D.)

In response to Rolison's characterization of the letter as a threat of litigation, Lexington protests that the letter "is hardly so clear," that its meaning "is, at best, uncertain," and that "a direct threat was not made prior to Lexington's filing."  (Response, at 7-8.)  This position is not credible.  The January 10 letter cannot reasonably be construed as anything other than a direct threat of litigation; indeed, the Court is at a loss to envision (and Lexington does not suggest) what Rolison might have done to "protect himself" other than to sue Bradford's insurers (including Lexington) on various coverage and bad-faith grounds in an effort to force the issue.  The "procedural fencing" criterion does not require Rolison to announce bluntly "I am going to sue you if you don't do what I want" before a filing can be deemed anticipatory.  In any event, Lexington was plainly on notice that he intended to do just that.[19]  Therefore, Lexington's act of

---

[19]     The Court understands Lexington's position that Rolison could not have sued it until the *Miller* appeal was final, and that it could not reasonably have predicted that Rolison would dismiss that appeal in order to give him standing to sue Lexington.  (Response, at 9-11.)  In other words, Lexington seems to be saying that it waved aside Rolison's threat as mere idle talk.  The Court also understands Rolison's position that he already had standing to sue Lexington based on events preceding the *Miller* judgment, such as Lexington's alleged bad-faith failure to settle on his behalf.  (Reply, at 2.)  The undersigned need not wade into this morass to evaluate this *Ameritas* factor.  The critical fact is that Rolison unambiguously threatened legal action if Lexington failed to provide a bond; therefore, Lexington could and should reasonably have anticipated that Rolison would take any and all steps it deemed necessary and appropriate

responding to this revelation by quickly filing a declaratory judgment action of its own cannot reasonably be construed as anything other than an anticipatory filing.[20]  While not dispositive, the fact that Lexington filed an anticipatory declaratory judgment action to secure a federal forum immediately upon learning that Rolison was planning a lawsuit of his own favors abstention.  *See Manuel*, 430 F.3d at 1137 (district court does not abuse discretion by dismissing declaratory judgment action in reliance on fact that action was filed in apparent anticipation of another proceeding).

The fifth *Ameritas* consideration is "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction."  411 F.3d at 1331.  Although neither side's briefs address it explicitly, this factor favors abstention given the potential for friction inherent in having double-tracked, near-identical litigation pending in both federal and state courts, such that the first court's ruling on a particular issue may have *res judicata* effect on the second court's ability to hear and decide the same issue, even if the second court disagrees with the first court's determinations.  The risk of improper encroachment exists for the same reasons.

Sixth, *Ameritas* directs courts to examine "whether there is an alternative remedy that is better or more effective."  *Id.*  Rolison urges the Court to answer this question affirmatively,

---

to carry out that threat.  Lexington apparently did just that, since it sued Rolison barely a week after the threat was made.  As for Lexington's assertion that Rolison's dismissal of his appeal in *Miller* was a breach of his obligations under the applicable policy (Response, at 10-11), that merits-based argument (even if correct) appears ancillary and unrelated to the question of whether Lexington's filing of this lawsuit was in anticipation of the *Rolison* Action.  The Court will not venture so far afield in resolving the narrow abstention issues before it at this time.

[20]     Lexington suggests that the timing of its declaratory judgment action is properly explained not by the January 10 letter, but by the *Miller* court's denial of Rolison's motion to stay execution of the judgment pending appeal.  (*See* Response, at 12; doc. 19 in *Rolison* Action.)  This reasoning is unpersuasive.  By Lexington's own reckoning, the motion to stay was denied back on December 16, 2005.  (Response, at 5.)  If, as Lexington claims, it filed the declaratory judgment action "after it became clear the judgment could be executed on Rolison" (Response, at 11), it would have done so in mid-December when the motion to stay was denied, and would not have tarried for some 35 days before taking action.  From a temporal standpoint, the January 10 letter is a far more likely catalyst of the January 20 lawsuit than would be the December 16 state court ruling.

inasmuch as the *Rolison* Action can incorporate all of the similar, overlapping legal issues among Rolison, the various insurance carriers and Bradford.  Should this action proceed, Rolison argues, the Court will decide a small slice of the dispute, but the remainder will still need to be addressed by the Choctaw County court, such that the state court remedy will be far more effective, economical and efficient.  In response, Lexington does not contest that all disputed issues in these related cases may be effectively and efficiently resolved in a single forum in the *Rolison* Action.  Instead, Lexington unveils a protracted criticism of Rolison's choice of a Choctaw County venue for the *Rolison* Action which, in its view, renders the "alternative remedy" unsatisfactory.  (Response, at 16-19.)  Notably, Lexington does not contend that Rolison was forbidden from filing his lawsuit in Alabama state court; rather, its point is that Rolison should have selected Mobile County, not Choctaw County.  But this Court is not empowered to enter advisory rulings for an Alabama state court as to whether venue does or does not properly lie in a particular county; therefore, it would constitute inappropriate encroachment and interference for this Court to pass judgment on the propriety of a Choctaw County venue in another case.  Moreover, assuming (without deciding) that venue in Choctaw County is improper, that fact does not render the *Rolison* Action an inferior, unacceptable or non-viable remedy.  To the contrary, if Lexington's venue arguments are accepted by the state court, then the most likely outcome is not dismissal of the *Rolison* Action, but transfer to an Alabama county where venue does properly lie.  None of this venue debate will or can deprive the alternative remedy of its efficacy.  Therefore, the Court rejects Lexington's contention that the alleged venue problems in the *Rolison* Action sway the "alternative remedy" factor in favor of exercising jurisdiction.[21]

---

[21]     Of course, the not-so-subtle subtext of Lexington's venue objection is that Lexington should not be penalized for filing anticipatory litigation when Rolison himself has "engaged in illicit forum-shopping" by filing his lawsuit in the wrong state court.  (Response, at 18.)  But a state court plaintiff need not engage in model, exemplary conduct in order for a district court to be justified in exercising its discretion not to hear a redundant declaratory judgment action. The *Ameritas* guideposts do not specifically take into account the behavior of the state court plaintiff in deciding whether considerations of federalism, efficiency and comity militate in favor of abstention from hearing a declaratory judgment action concurrently with a parallel state court proceeding.  To the extent that Rolison's alleged forum-shopping in state court is a relevant factor in the exercise of *Wilton* discretion, it does not substantially influence

The seventh and eighth *Ameritas* guideposts are "whether the underlying factual issues are important to an informed resolution of the case" and, if so, "whether the state trial court is in a better position to evaluate those factual issues than is the federal court." *Id.* On this record, any legal determination of Rolison's status under the relevant policies of insurance will likely depend, at least in part, on the underlying facts surrounding Rolison's relationship with Bradford. Although it is not immediately clear that an Alabama state court would be better equipped than a federal court to make those factual assessments, the Alabama court would have a distinct advantage in one important respect, to-wit: It would have all the claims, all the factual issues, all the parties and all of the evidence before it, while this Court would be forced to reckon with only a portion of those facts based on evidence presented by a subset of the parties to the state proceedings. Simply put, the state court would be better able to see the whole board, rather than just the sliver of it presented in federal court. Thus, while these two factors are largely neutral, they do lend some modicum of support to declining jurisdiction over the declaratory judgment action.

Ninth and finally, *Ameritas* directs district courts to consider "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Id.* This factor unambiguously weighs in favor of abstention. Lexington's Complaint (and Bradford's Counterclaim, for that matter) raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law. Lexington does not and cannot contest the application of this guidepost in support of abstaining from jurisdiction over these proceedings.

Considered collectively, the *Ameritas* guideposts and the other arguments and factors

--------

the Court's decision because (a) there is no evidence that Rolison's decision to file in the county where he resides did not arise from a good-faith (even if mistaken) interpretation of Alabama venue rules, (b) in the undersigned's experience, defects in venue are relatively common and innocuous, as they are often waived by defendants and easily remedied otherwise, (c) such ostensible "illicit forum-shopping" may be readily corrected by Lexington seeking for a transfer of venue in the *Rolison* Action, and (d) the degree of virtue of the plaintiff's litigation strategies in the state court proceedings is a tangentially relevant factor, at best, and is therefore entitled to little weight in the *Ameritas* process.

identified in the parties' briefs point towards abstention.  The chronology of events yields an unmistakable inference that Lexington filed its declaratory judgment lawsuit for strategic purposes in a race to the courthouse to lock in a federal forum upon being threatened with suit by Rolison's counsel.  That factor, by itself, might warrant abstention.  *See Manuel*, 430 F.3d at 1137 (explaining that a district court does not abuse discretion in relying on fact that declaratory action was filed in anticipation of another proceeding as a basis for dismissal).[22]

But there's more here.  This declaratory judgment action implicates exclusively Alabama state law issues relating to which of several parties bears legal responsibility for satisfying a judgment entered by an Alabama state court based on the verdict of an Alabama state jury.  It is undisputed that all of the legal and factual issues raised by Lexington here are also at issue in the currently pending Choctaw County action, and that Bradford could readily interpose its monetary claims against Lexington in that proceeding.  That fact supports abstention.  *See Sherwin- Williams Co. v. Holmes County*, 343 F.3d 383, 390-91 (5th Cir. 2003) ("if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit"); *ITT*, 2006 WL 950751, at *9 (describing wasteful, inefficient outcome if both federal court and state court ruled on parallel actions, with duplication, piecemeal resolution of issues, and encroachment on other proceedings).  As one appellate court sagely put it, "[i]t hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed on parallel tracks."  *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992).  What's more, this action cannot completely and finally resolve this dispute, but will leave various issues for resolution in the Choctaw County action irrespective of the outcome of the declaratory issues in federal court.  That kind of piecemeal litigation, and the ensuing

---

[22]     Other appellate courts have adopted similar approaches, reasoning that "federal courts should generally decline to entertain reactive declaratory actions."  *Dizol*, 133 F.3d at 1225; *see also Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1289 (9th Cir. 1996) (explaining that federal case is deemed "reactive" even where it was filed before state case, if insurer who anticipates that insured intends to sue it in state court rushes to file declaratory judgment action in federal court to preempt state court proceedings).

friction, gratuitous interference, and unease between state and federal courts confronted with precisely the same issues presented by the same litigants, counsels against exercising jurisdiction here. *See Ameritas*, 411 F.3d at 1332 (agreeing with district court that allowing declaratory judgment action to proceed would amount to gratuitous interference with more encompassing, currently pending state court action); *Poston*, 88 F.3d at 257 ("at least where another suit involving the same parties and presenting opportunities for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed") (citations omitted).

In short, taking to heart *Wilton*'s concerns of "practicality and wise judicial administration," the Court finds that those virtues would be poorly served by retaining jurisdiction over this declaratory judgment action, inasmuch as (a) the same exclusively state law issues presented here are being litigated by the same parties in a parallel state court proceeding, (b) this action includes only a subset of the matters being litigated in the state court, and (c) this action was filed in anticipation of the state court proceeding. Furthermore, it appears that all parties to this action will have full and adequate recourse to litigate all legal issues presented herein (including, without limitation, the Counterclaims of Bradford) in the *Rolison* Action; at any rate, no party has argued otherwise. *See Wilton*, 515 U.S. at 283 (suggesting that abstention determination ought to consider whether claims of all parties in interest can satisfactorily be adjudicated in state court proceeding). For all of these reasons, the Court finds that *Ameritas* analysis strongly favors declining to exercise jurisdiction.

### 3.  *The First-Filed Rule is Inapplicable.*

Lexington strives to retain the federal forum for this declaratory judgment action by invoking the first-filed rule, pursuant to which "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11ᵗʰ Cir. 1982). Lexington's position is that, because this action predates the *Rolison* Action, this Court should apply the first-filed rule and hear this action to the exclusion of the Choctaw County proceedings.

The flaw in this argument is that the first-filed rule is not an absolute, mandatory, inflexible requirement. Rather, courts have routinely cautioned against rote, mechanical application of the first-filed rule, and instead weigh the first-filed issue in the broader context of

the ends of justice. *See, e.g., Lockheed Martin Corp. v. L-3 Communications Corp.*, 405 F. Supp.2d 1381, 1383 (N.D. Ga. 2005) (recognizing that "first-filed rule should not be mechanically applied"); *Barnett v. Alabama*, 171 F. Supp.2d 1292, 1296 (S.D. Ala. 2001) ("we are mindful that the rule is not meant to be rigid, mechanical or inflexible, but is to be applied in a manner that best serves the interests of justice").[23] Indeed, "[t]he most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 2001 WL 897452, *3 (6th Cir. July 31, 2001) ("District courts have the discretion to dispense with the first-to-file rule where equity so demands."). Not surprisingly, one equitable factor that courts have considered in assessing whether the first-filed rule applies is whether the first-filed action was filed in anticipation of a second-filed lawsuit. *See Manuel*, 430 F.3d at 1135; *Pennsylvania Lumbermen Mutual Ins. Co. v. T.R. Miller Mill Co.*, 2006 WL 276964, *3 (S.D. Ala. Feb. 2, 2006) (whether federal declaratory action was an anticipatory filing is a factor in deciding whether to cede jurisdiction to later-filed state action).[24] In light of

---

[23]     Courts in other jurisdictions have made these points even more forcefully. *See Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) ("We apply the general rule favoring the forum of the first-filed case, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise."); *AmSouth Bank v. Dale*, 386 F.3d 763, 791 (6th Cir. 2004) ("the first-filed rule is not a strict rule"); *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 350 (D.C. Cir. 2003) (in determining which court should adjudicate parallel actions, "we have emphasized that the district court must balance equitable considerations rather than using a mechanical 'rule of thumb'"); *Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002) ("But 'first filed' is not a 'rule.' It is a factor that typically determines, 'in the absence of compelling circumstances,' which of two concurrent federal court actions should proceed to judgment."); *Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir. 2000) ("There is no 'first filed doctrine' requiring dismissal of all suits after the first ...."); *FMC Corp. v. AMVAC Chemical Corp.*, 379 F. Supp.2d 733, 738 (E.D. Pa. 2005) (explaining that "first-to-file rule is not a mandate directing wooden application of the rule").

[24]     *See generally Poston*, 88 F.3d at 258 ("although the federal action was filed first, we decline to place undue significance on the race to the courthouse door, particularly in this instance where Centennial had constructive notice of the Postons' intent to sue"). Certain appellate courts have taken the *Manuel / Poston* reasoning one step further by rejecting the first-

the foregoing analysis, including the finding that Lexington filed this action in anticipation of Rolison initiating legal action, as well as application of the remaining *Ameritas* factors, the Court readily concludes that the requisite "compelling circumstances" exist to remove this action from the ambit of the first-filed rule.  The interests of justice are not served by observing the first-filed rule here; therefore, the Court declines Lexington's invocation of that discretionary "rule."

> 4.    *Stay or Dismissal?*

Having determined that *Wilton* discretion is in play, and having applied the *Ameritas* guideposts to conclude that abstention will promote the interests of practicality, comity and efficient, wise administration of justice, the Court now must decide which of dismissal or stay is the appropriate remedy.  Despite their expansive briefing, Rolison, Lexington and Bradford omit discussion concerning whether, once abstention is deemed appropriate, the proper course of action is dismissal without prejudice or a stay pending resolution of the state court proceeding. Notwithstanding this omission, the Court must address and resolve this issue in order to determine what form the abstention should take here.

In *Wilton*, the Supreme Court observed that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."  515 U.S. at 288 n.2; *see also Gatewood Lumber, Inc. v. Travelers Indem. Co.*, 898 F. Supp. 364, 369 (S.D. W.Va. 1995) (staying declaratory judgment action, rather than dismissing it under *Wilton*, "to alleviate the risk of a possible time bar to otherwise viable causes if the State action fails to resolve all matters in controversy").  However, numerous courts engaging in abstention pursuant to *Brillhart* and *Wilton* have elected to dismiss the declaratory action without prejudice, rather than staying it.  *See, e.g., Ameritas*, 411 F.3d at 1332 (finding no abuse of discretion in district court's decision to dismiss declaratory judgment action in favor of parallel state court action); *Summy*, 234 F.3d at 136 (vacating district court's

---

filed rule altogether in matters of *Wilton* discretion.  *See Summy*, 234 F.3d at 136 ("It is irrelevant that the state declaratory judgment petition was filed after its counterpart in the District Court.").  The Court need not and does not repudiate the first-filed rule altogether in order to find that its application is unwarranted under the specific facts and circumstances of this case.

decision to exercise jurisdiction over declaratory judgment action and remanding with instructions that the complaint be dismissed pursuant to *Wilton*); *Poston*, 88 F.3d at 258 (affirming dismissal of declaratory judgment action without prejudice where parallel state court action contained defendant and issues not present in federal action); *St. Paul Fire & Marine Ins. Co. v. Johnson Homes of Meridian, Inc.*, 2005 WL 2739141, *10 (S.D. Ala. Oct. 24, 2005) (abstaining from hearing declaratory judgment action in favor of parallel state court proceeding and dismissing declaratory judgment action).

The Court finds that dismissal is warranted here for two reasons. First, in contrast to the concerns articulated in *Wilton* and *Gatewood*, no party has suggested that there would be any reasonable risk of a time bar in the Choctaw County action with respect to any claim asserted in this action, so as to render a stay appropriate. Second, if this action were stayed, it is possible that certain parties might choose to forego their claims in the *Rolison* Action in state court in hopes that they might litigate them in federal court after the conclusion of the *Rolison* Action and after the stay is lifted. Thus, in the circumstances presented here, granting a stay might yield the type of forum-shopping and piecemeal litigation that *Wilton*/*Brillhart* abstention was designed to prevent. Based on these considerations, and in the absence of argument or analysis by the parties, the Court concludes that this action is due to be dismissed, rather than stayed.

III.   **Conclusion.**

For all of the foregoing reasons, defendant Rudolph Rolison's Amended Motion to Dismiss and/or Motion to Abstain (doc. 8) is **granted**. This action is hereby **dismissed without prejudice** pursuant to *Wilton*/*Brillhart* abstention, to enable the parties to litigate all issues pertaining to this dispute in the parallel lawsuit currently pending in Choctaw County Circuit Court. In light of this disposition, Lexington's Motion to Dismiss Count Two of Bradford's Counterclaim (doc. 30) and Bradford's Motion for Leave to File Amended Counterclaim (doc. 35) are both **moot**. Defendant Rolison's original, superseded Motion to Dismiss and/or Motion to Abstain (doc. 7) is likewise **moot**. A separate judgment will enter.

DONE and ORDERED this 16th day of May, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

-23-